## Kelly *against* Thompson.

An absolute deed of conveyance, and separate agreement by the grantee to reconvey upon the payment of a certain sum of money at a certain time, is but one transaction, and the whole constitute a mortgage. But if the agreement by the vendee be subsequent and independent, that he will reconvey upon the repayment of the purchase money, it does not convert the first deed into a mortgage, nor in any way affect its validity.

When the date of a deed and a recital contained in it are irreconcilable by the instrument itself, the party to it is not estopped from establishing the truth by parol evidence.

ERROR to the common pleas of *Alleghany* county.

James Kelly against Stewart Thompson and wife, Mary Sampson, John Sampson, David Sampson and William Sampson.

The plaintiff sues in partition, claiming one seventh part of a tract of land in common with the defendants, under a conveyance from George Bailey, who claimed under James G. Sampson, one of the heirs at law of ―――― Sampson, deceased. The plaintiff produced a deed from James G. Sampson to George Bailey, dated the 16th of

October 1834, acknowledged on the same day, and recorded on the 22d of October in the same year; also a deed from George Bailey to the plaintiff Kelly, dated the 10th of May 1836, with a covenant of general warranty, acknowledged and recorded the same day. To rebut this title the defendants produced an instrument alleged to be a defeasance, dated the 21st of October 1834, signed by George Bailey, stipulating that " if James G. Sampson pays him 1000 dollars, his expense and trouble for attending and improving the land he Sampson sells him this day, he redeeds the same back if the 1000 dollars with interest is paid within one year from that date." The defendants then produced a sheriff's deed for James G. Sampson's undivided one seventh part to Stewart Thompson, dated the 22d of April 1836, made in pursuance of a *fieri facias, venditioni,* and sale upon a judgment entered by William M'Call *v.* Thomas Sampson and James G. Sampson on the 20th of October 1834. They further showed a judgment for 500 dollars in favour of Bailey against James G. Sampson, entered the 10th of March 1834, which it was admitted was part of the consideration money of the land sold by Sampson to Bailey; and they proved by H. N. Weyley, Esq. that a deed from Bailey back to Sampson for the property was drawn, dated the 13th of April 1835, at the instance of Thompson; and Bailey produced a paper stating it to be the amount which was to be paid before he would acknowledge the deed.

The plaintiff then called a witness, L. Stewart, Esq., to show that the deed of the 16th of October 1834 was drawn by him and acknowledged before him on that day, and 100 dollars paid by Bailey to Sampson.

He also proved by the deposition of J. H. Nippurt, that in the year 1834, after the sale by Sampson to Bailey, Bailey said to Sampson that he would release the property back by Sampson's paying him the amount he was indebted to him; and a paper was written by Bailey, of which the contents were not known. A short time previous Sampson's sister said she would try and get the property back for her brother from Bailey, and appeared much dissatisfied about Bailey's having it. Sampson said he had got money at different times from Bailey.

The plaintiff then offered a series of evidence contained in the paper book, tending to establish that previous to the deed articles of agreement for the sale of the land existed between Sampson and Bailey, by which Sampson agreed to sell and did absolutely sell the land to Bailey for 1000 dollars; that the deed was made in pursuance of these articles; that at the time of the execution of the deed an absolute sale only was spoken of by the parties; that any mortgage or resale was not then talked of or in contemplation of the parties so far as could be inferred from their acts and language; that the paper called a defeasance was not in fact made or executed till several days after the execution and delivery of the deed, nor till the 21st of October 1834, the day of its date; that said small paper and

[Kelly v. Thompson.]

the subject of its contents originated at the time of its execution, and arose from an accidental meeting of the parties at the time, nothing having been said previously between the parties about a reconveyance; and proof that in 1838 Thompson *et al.* acknowledged Bailey's title by joining in a lease under which the lessee held and paid a portion of the rent to the plaintiff; and that in conducting the sheriff's sale Thompson's agent or attorney, both before and after the sale by the sheriff, assured Bailey he should have his money and interest refunded to him; and that the value of the land was but 1000 dollars, &c. To this testimony the defendant objected, the court overruled it and sealed a bill of exceptions.

The plaintiff then offered to prove that Thompson had actual notice and possession of the paper dated the 21st of October 1834; that he caused it to be put on record on the 14th of July 1835; and that there was no counterpart; and that at the time of its execution it was delivered to Sampson. Also, that Thompson obtained the control of and adopted judicial proceedings under the judgment of M'Call for the purpose of defeating the right of Bailey, of which he had actual notice. This the defendant objected to, and the court sealed another bill.

Whereupon the court charged the jury as follows:

1. That the deed of conveyance and defeasance are to be regarded as one instrument, and are a mortgage.

2. That the judgment having been entered before the recording of the defeasance, the purchaser under M'Call's judgment takes the title unincumbered by the mortgage, and the defendants therefore are entitled to a verdict.

The errors assigned were:

1. In rejecting the evidence contained in the first and second bills of exception.

2. The court erred in charging the jury that the deed of conveyance from Sampson to Bailey and defeasance are to be regarded as one instrument and are a mortgage.

3. There was error in charging the jury "that the judgment having been entered before the recording of the defeasance the purchaser under M'Call's judgment takes the title unincumbered by the mortgage, and the defendants are therefore entitled to a verdict."

*M'Candless* and *Biddle*, for plaintiff in error, cited, 3 *Watts* 188; 6 *Watts* 420; 5 *Binn.* 503; 9 *Serg. & Rawle* 447; 7 *Cranch* 218; 2 *Watts* 66.

*Shaler*, for defendant in error, cited, 1 *Mass.* 224; 6 *Watts* 127; 11 *Peters's Rep.* 353; 17 *Serg. & Rawle* 70; 3 *Penns. Rep.* 241.

The opinion of the Court was delivered by

SERGEANT, J.—This case presents the consideration of the question that has so repeatedly been a theme of litigation in our courts,

[Kelly v. Thompson.]

whether the transaction between these parties is to be considered as a mortgage or as an absolute sale in the first instance, with a subsequent distinct and independent agreement by the vendee, that on repaying him within a limited time the amount of the purchase money and interest he would reconvey the property. If it is the latter, the deed being executed and delivered on the 16th of October 1834 prior to the judgment, gives a better title than that under the sheriff's sale upon the judgment. Whereas if the transaction was a mortgage, then the defeasance not being recorded with the deed nor prior to the judgment (nor indeed till long after), the conveyance to Bailey was an unrecorded mortgage, and will be postponed to the title under the judgment, agreeably to the decision in Freedly v. Hamilton, 17 *Serg. & Rawle* 70.

I do not perceive in this evidence on what grounds this transaction can be treated as a mortgage. It is true a deed with a defeasance on payment of money is put on the same footing by a court of equity as a deed of mortgage in which the condition is contained in the same instrument. If it is in reality a security for the loan of money, it is the same whether it be contained in one or more instruments. But there is no evidence here that this transaction was in reality a loan of money, or that these instruments constituted one transaction, and that the conveyance was intended only as a security for the loan. On the contrary, all the evidence given in the case goes to show that the sale and conveyance were, in the first instance, absolute; and that the agreement to reconvey was a separate and independent bargain. The deed to Bailey purports to have been executed and delivered on the 16th of October 1834: the evidence of Mr Stewart goes to show that it was executed, acknowledged and delivered on that day, and there is no parol evidence to the contrary. Of course the title vested absolutely in Bailey on that day, if there were nothing further. The defeasance is not dated till five days after, viz. the 21st of October; and there is no parol evidence that it was executed sooner. So far, then, from appearing to be one transaction on the face and dates of the papers, they appear to be distinct and unconnected; and unless we go to the extent of saying that when a person has obtained an absolute deed he shall not, at any distance of time, be permitted to agree to reconvey on recovering back his purchase money and interest, without being placed in the predicament of a mortgagee, and subjected to the loss of both land and debt by the liens of intervening creditors, it would be impossible to treat this as a mortgage. It is true dates and papers of this kind may be affected, if it can be shown that the whole was merely a scheme or contrivance; that in reality it was a loan merely; and that the defeasance was understood and agreed on in the original arrangement, and the discrepancy of dates was merely accidental or with a sinister design. But that must be shown in a case like the present *aliunde*.

It is contended that this is proved by the clause in the paper of

[Kelly v. Thompson.]

the 21st, "the land he, Sampson, sells me this day," and that Bailey was estopped by this averment from alleging that in fact the deed was executed and delivered previously. I do not think so. On the general issue before a jury the plaintiff is not estopped from showing that these words were mistakenly introduced, nor is the jury estopped from finding the truth. Estoppels to shut out the truth and deprive a party of his property, contrary to the real merit of his title, are odious; nor are they available unless strictly pleaded. We permit parol evidence to show mistakes in the execution of instruments; and a court of equity examines into the real merits of a transaction of this nature, where the papers are inconsistent, to ascertain what was the transaction between the parties. The whole evidence in this case tended to show that in fact the deed was executed and delivered on the 16th, and that the agreement of the 21st was a distinct and unconnected matter. . At least I am not aware that there is any to the contrary; though I would not wish to be understood as intimating an opinion that may operate should any new facts on the subject be disclosed on another trial of the cause.

As to the authorities which have been relied on, the cases in which the decisions occurred were very different from the present. In Kerr *v.* Gilmore, 6 *Watts* 405, the conveyance and the defeasance were dated and executed on the same day, and Mr. Justice Huston, in delivering the opinion of the court, draws the distinction between the case of a deed and agreement of separate and distinct dates and arising out of contracts really separate, and where they are of the same date and executed at the same meeting of the parties before the same witnesses and therefore in point of law one transaction; holding that the latter must be a mortgage, whereas the former may be a sale, if there are not circumstances showing it to be a security for a loan of money. And in Colwell *v.* Woods, 3 *Watts* 138, the deed of conveyance and covenant were executed contemporaneously, and constituted in law one instrument, and were considered as if inserted in one conveyance; and the ground of the decision was, that the evidence showed that the transaction was founded on a loan of money, and the deed of conveyance was given as a security for its repayment. See 6 *Watts* 420, 421. None of these features occur in the present case on the evidence given.

In relation to the bills of exception, I am of opinion that the first proposition, as a whole, was properly rejected, because it contained some matters which were certainly not evidence, such as the inferences from the acts and declarations of the parties, and the assurances of Thompson's agent or attorney as to Bailey's having his money refunded; but that the residue ought to have been received, to enable the court and jury to judge better of the real nature of the transaction, and to explain any ambiguities arising on the face of the papers.

The second bill of exceptions is not sustained. The bill of Thompson relates to the judgment, and notice to him is immaterial;

VII.—2 K

[Kelly v. Thompson.]

it would not put him in the situation of a purchaser with notice; it could not do so without affecting the right and interest of the judgment creditor in the value of the property to the full. The same remark applies to the residue of the offer.

Judgment reversed, and a *venire facias de novo* awarded.